# EXHIBIT A

Docketed 1/22/24

# COMMONWEALTH OF MASSACHUSETTS

**Norfolk, ss.**

**DEPARTMENT OF THE TRIAL COURT**
**NORFOLK SUPERIOR COURT**
**(DEDHAM)**

| | |
|---|---|
| TOWN OF BRAINTREE, ) | 2482cv0055 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| AGC CHEMICAL AMERICAS, INC.; AGC ) | |
| INC. F/K/A ASAHI GLASS CO.; ) | |
| ARCHROMA U.S., INC.; ARKEMA INC.; ) | |
| BASF CORPORATION; BUCKEYE FIRE ) | |
| EQUIPMENT COMPANY; CARRIER ) | |
| GLOBAL CORPORATION; CHEMDESIGN ) | |
| PRODUCTS, INC.; CHEMGUARD, INC.; ) | |
| CHEMICALS INCORPORATED; CHUBB ) | |
| FIRE, LTD.; CLARIANT CORPORATION; ) | |
| DEEPWATER CHEMICALS, INC.; DOE ) | |
| DEFENDANTS, JOHN 1-49; DYNAX ) | |
| CORPORATION; KIDDE PLC, INC.; ) | |
| NATIONAL FOAM, INC.; NATION FORD ) | |
| CHEMICAL COMPANY; RAYTHEON ) | |
| TECHNOLOGIES CORPORATION F/K/A ) | |
| UNITED TECHNOLOGIES ) | |
| CORPORATION; TYCO FIRE PRODUCTS, ) | |
| LP; AND UTC FIRE & SECURITY ) | |
| AMERICAS CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Town of Braintree ("Plaintiff"), by and through its undersigned counsel, brings

this action against Defendants AGC Chemical Americas, Inc., AGC, Inc. f/k/a Asahi Glass Co.,

Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company,

Carrier Global Corporation, ChemDesign Products, Inc., Chemguard, Inc., Chemicals

Incorporated, Chubb Fire, LTD., Clariant Corporation, Deepwater Chemicals, Inc., John Doe

1

Defendants 1-49, Dynax Corporation, Kidde PLC, Inc., National Foam Inc., Nation Ford

Chemical Company, Raytheon Technologies Corporation f/k/a United Technologies

Corporation, Tyco Fire Products, LP, and UTC Fire & Security Americas Corporation

(collectively, "Defendants"). Plaintiff, based on information, belief and investigation of

Counsel, alleges as follows:

## I.      SUMMARY OF THE CASE

1.      Plaintiff brings this action against Defendants to recover the considerable costs and

damages that it has incurred and will inevitably continue to incur—as a result of the presence of

toxic compounds, identified as per- and polyfluoroalkyl substances ("PFAS"), on Plaintiff's real

property and in Plaintiff's drinking water sources.

2.      Plaintiff owns and operates a public water system that provides potable water to its

customers.  Plaintiff draws raw water from the Great Pond Reservoir System, which is a surface

water source.  Plaintiff's property, water sources and supply, water supply and delivery system

infrastructure, including any treatment systems, are collectively referred to as "Plaintiff's Property"

in this Complaint.

3.      Plaintiff has detected PFAS compounds in its water supplies.  PFAS is a family of

compounds including perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonate

("PFOS"), chemicals that have long been manufactured as components for aqueous film-forming

foam ("AFFF")—a product used to control and extinguish aviation, marine, fuel, and other shallow

spill fires.

4.      PFOA and PFOS both are known to be toxic, persistent in the environment, and

resistant to biodegradation.  These compounds move easily through soil and groundwater and pose

a significant risk to environmental and human health and safety. Both are animal carcinogens and

likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA")

has stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

5.    Upon information and belief, at various times throughout the 1960s to present date, Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in Massachusetts.

6.    At all relevant times, upon information and belief, Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products—including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present significant and unreasonable risks to both human health and the environment. Nevertheless, Defendants made a conscious choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, all while knowing PFAS compounds would be inevitably released into the environment—for instance, in the use of AFFF for fire protection, training, and response activities, even when used in the manners directed and intended by the manufacturer—and concealing their knowledge of the risks involved.

---

[1] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document No. 822-R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023); *see also* EPA, *Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)*, EPA Document Number: 822-R-16-005 (May 2016) at 16, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OM4O.txt (last accessed May 8, 2023).

7.     At all relevant times, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through the use of Defendants' Fluorosurfactant Products, as Defendants did not disclose the toxic nature and harmful effects of their Fluorosurfactant Products.

8.     As a result of Defendants' unreasonable acts and omissions, PFAS compounds entered critical sources of water relied upon by Plaintiff to provide for its residents and employees, and have contaminated Plaintiff's Property—thereby subjecting Plaintiff's customers and the general public to the inherent danger of these chemicals. As the manufacturers and sellers of Fluorosurfactant Products, Defendants are responsible for the PFAS contaminants released into Plaintiff's Property.

9.     Through this action, Plaintiff now seeks to recover all available damages arising from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants' actions as asserted herein. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## II.     PARTIES

A.     *PLAINTIFFS*

10.     Plaintiff's Water and Sewer Department is located at 85 Quincy Avenue, Braintree, MA 02184. Plaintiff operates its public water supply system pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300(f)(15), and the reporting system of the U.S. EPA.

11.     Plaintiff has detected PFAS in at least one of its water sources.

12.     The Braintree Fire Department provides fire and emergency medical response services to the area surrounding Plaintiff's Property. Upon information and belief, Defendants'

AFFF products were used for fire-training and fire-fighting activities at sites in and/or around Plaintiff's Property.

13.    Textron, Inc. has been identified by the Massachusetts Department of Environmental Protection ("DEP") as a Potentially Responsible Party for the release of PFAS at 530 West Street, Braintree, MA 02184. PFAS were detected in the groundwater at this site and have been identified as a possible source of the PFAS present in Plaintiff's Property.

14.    Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public, as well as an interest in Plaintiff's Property.

B.    *DEFENDANTS*

15.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

16.    **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

17.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

18.    **ARCHROMA U.S.:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

5

19.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under

the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King

of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

20.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its

principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon

information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

21.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a

foreign corporation organized and existing under the laws of the State of Ohio, with its principal

place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant

manufactured and sold AFFF that contained PFOA.

22.    **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware

corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach

Gardens, Florida 33418.

23.    **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a

Texas corporation with its principal place of business located at 2 Stanton Street, Marinette,

Wisconsin 54143.

24.    **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation

organized and existing under the laws of the State of Wisconsin, with its principal place of business

located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold

AFFF that contained PFOA.

25.    **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas

corporation with its principal place of business located at 12321 Hatcherville Road, Baytown,

Texas 77521.

26.     **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C., Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

27.     **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

28.     **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

29.     **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

30.     **KIDDE PLC:** Defendant Kidde PLC, Inc. ("Kidde PLC") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

31.     **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus

7

Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). This Defendant manufactured and sold AFFF that contained PFOA.

32.     **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

33.     **RAYTHEON TECHNOLOGIES CORP.:** Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

34.     **TYCO:** Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

35.     Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

36.     Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

37.     **UTC:** Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United Technologies Corporation.

8

38.     Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

39.     All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the state of Massachusetts.

40.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

41.     The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION & VENUE

42.     This Court has jurisdiction pursuant to M.G.A.212 § 3 because this is a civil action for damages in an amount that exceeds the minimal jurisdictional limits of this Court.

43.     Venue is appropriate in this county because it is the county in which Plaintiff is located and has its usual place of business.

## IV.    FACTUAL ALLEGATIONS

A.    *THE PFAS CONTAMINANTS AT ISSUE: PFOA AND PFOS*

44.    Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

45.    PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

46.    PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

47.    Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

48.    Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

---

[2] *See* note 1, *supra*.

[3] *See id.*

10

49.     Notably, from the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS. According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).[4] The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[5]

50.     Additionally, the EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example […] an airfield at which [PFOA/PFOS] were used for firefighting."[6]

51.     EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the

---

[4] See EPA, *Fact Sheet PFOA & PFOS Drinking Water Health Advisories*, EPA Document Number: 800-F-16-003, available at available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OR9W.txt (last accessed May 8, 2023).

[5] See EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023).

[6] See note 4, *supra*.

agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt). EPA announced

new Interim Updates Health Advisory levels of 0.004 ppt for PFOA and 0.02 ppt for PFOS.[7]

B.    *AQUEOUS FILM-FORMING FOAM (AFFF) WAS A PRODUCT CONTAINING PFOS AND/OR PFOA AT THE RELEVANT TIME PERIOD*

52.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first

developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

53.    Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum

or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by

coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

54.    The AFFF products made by Defendants during the relevant time period contained

either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF

produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a

process that generates PFOS. PFHxS is also formed during this process. All other Defendants

used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade

into PFOA, but not PFOS.

55.    When used as the Defendants intended and directed, the AFFF manufactured and/or

sold by the Defendants released PFOA and/or PFOS into the environment.

56.    Once PFOA and PFOS are free in the environment, they do not hydrolyze,

photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent

in the environment. As a result of their persistence, they are widely distributed throughout soil, air,

and groundwater.

---

[7] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, EPA Document Number 822-F-22-002, available at
https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed May 8, 2023).

57.    Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams do not release PFOA and/or PFOS into the environment.

58.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS,  which has ultimately led to the ongoing contamination and damages to Plaintiff's Property.

59.    Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within Massachusetts for many years. During these activities, Defendants' Fluorosurfactant Products were used as directed and intended by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the groundwater, enter into Plaintiff's property, thereby contaminating Plaintiff's Property.

60.    Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

C.    *DEFENDANTS' KNOWLEDGE AND CONCEALMENT OF THE DANGERS INVOLVED*

61.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

62.    At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous

13

system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

63.     For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[8]

64.     By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

65.     In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

66.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are

---

[8] *See* Office of Minnesota Attorney General, Exhibit List, No. 1588, Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1588.pdf (last accessed May 8, 2023).

[9] *See* DuPont, *C-8 Blood Sampling Results,* available at
https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC4
9KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-
581783177.1682689989 (last accessed May 8, 2023).

providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[10]

67.     Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

68.     After 3M exited the AFFF market in the United States, the remaining AFFF manufacturer Defendants continued to manufacture and sell AFFF containing PFOA and/or its chemical precursors.

69.     From 1951, Old DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

70.     Based on information and belief, by no later than 2001, Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks containing or degrading into PFOA to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and contaminated Plaintiff's Property.

71.     Old DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[11]

---

[10] *See* 3M, Internal Memorandum, *Organic Fluorine Levels*, (August 31, 1984), available at https://static.ewg.org/files/226-0483.pdf?_gl=1*1u237yp*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wMC4wLjAuMA..&_ga=2.39402538.885409355.1683587869-581783177.1682689989 (last accessed May 8, 2023).

[11] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed May 8, 2023).

72.     By December 2005, the EPA uncovered evidence that Old DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined Old DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[12]

73.     By July 2011, Old DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over Old DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified Old DuPont of a "probable link"[13] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[14] By October 2012, the C8 Science Panel had notified Old DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

74.     In July 2015, Old DuPont spun off its chemicals division by creating Chemours as a new publicly-traded company, once wholly owned by Old DuPont. By mid-2015, Old DuPont had dumped its perfluourinated chemical liabilities into the lap of the new Chemours.

---

[12] *Id.*

[13] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed May 8, 2023).

[14] *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last accessed May 8, 2023).

75.     Defendants knew, or reasonably should have known, at all times relevant to this action that it was substantially certain that their acts and omissions as set forth herein would threaten public health, cause extensive contamination of Plaintiff's Property and otherwise cause the injuries described herein.

76.     Notwithstanding their respective knowledge of the dangers involved with AFFF containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

77.     As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

78.     Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants

17

moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS.

Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health

hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner

for its intended purpose.

D.    THE HARM TO PLAINTIFF RESULTING FROM PFOA AND PFOS CONTAMINATION

79.    On at least one occasion, PFAS have been detected in Plaintiff's Property at levels

above EPA's Health Advisory Levels and/or the Massachusetts Maximum Contaminant Level for

PFAS6.[15]

80.    The detection and/or presence of PFOA and PFOS, and the threat of further

detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at

varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff.

It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS on Plaintiff's

Property requires investigation, remediation, and monitoring.

81.    Plaintiff has conducted and continues to conduct sampling, studies, and

investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct

sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment

approaches, and costs to analyze available alternatives.

82.    The invasion of Plaintiff's Property with PFOA and PFOS is continuous and

recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day—

the result of which is a new harm to the Plaintiff and its property in each occurrence.

83.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable

interference with, and damage to, Plaintiff's supplies of fresh drinking water.  Plaintiff's interests

---

[15] Massachusetts Department of Environmental Protection, *Massachusetts PFAS Drinking Water Standard (MCL)*, available at https://www.mass.gov/lists/massachusetts-pfas-drinking-water-standard-mcl#massachusetts-pfas-standard-for-public-drinking-water-supplies- (last accessed November 10, 2023).

in protecting the quality of its water supplies constitutes a reason for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

84.     Through this action, Plaintiff seeks to recover damages (including but not limited to compensatory, punitive, and/or consequential damages) arising from continuous and ongoing contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property as well as the costs incurred to acquire an alternative water supply.

**FIRST CAUSE OF ACTION**
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY DEFECTIVE DESIGN

85.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

86.     Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

87.     All of Defendants' AFFF products were manufactured for placement into trade or commerce.

88.     Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

89.     As manufacturers, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

90.     By manufacturing and selling PFAS-containing AFFF, Defendants warranted that such AFFF was merchantable, safe, and fit for ordinary purposes.

19

91.     Defendants breached that warranty as PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

    a.  PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

    b.  Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

    c.  PFOA and/or PFOS pose significant threats to public health; and,

    d.  PFOA and/or PFOS create real and potential environmental damage.

92.     Defendants knew of these risks associated with PFOA and PFOS, and failed to use reasonable care in the design of its AFFF products.

93.     AFFF containing PFOA and/or PFOS poses greater danger to the environment than would be expected by ordinary persons such as the Plaintiff and the general public.

94.     At all times, Defendants could make AFFF that did not contain PFOA/PFOS. Reasonable alternative designs existed which could prevent the Plaintiff's damage.

95.     The risks posed by PFAS-containing AFFF far outweigh the products' utility as a flame-control chemical.

96.     The likelihood that PFOA and/or PFOS-containing AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the Plaintiff's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

97.     Upon information and belief, users and consumers of Fluorosurfactant Products relied on Defendants' implied warranty that their AFFF products were safe for use in outdoor fire emergency scenarios and fire control exercise.

98.     As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing AFFF, the Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

99.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

**SECOND OF ACTION**
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY FAILURE TO WARN

100.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

101.    As a manufacturer of PFAS-containing AFFF, each Defendant had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiff, the public, and public officials.

102.    PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

    a.  PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

    b.  Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

21

    c.   PFOA and/or PFOS pose significant threats to public health; and

    d.   PFOA and/or PFOS create real and potential environmental damage.

103.    Defendants knew of the health and property damage risks associated with PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFOA/PFOS-containing AFFF or an instruction that would have allowed Plaintiff to avoid the damage to its property.

104.    Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of PFAS-containing AFFF in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFAS-containing AFFF to Plaintiff, governmental agencies, or the public.

105.    Plaintiff would have heeded legally adequate warnings or would have taken steps to prevent potential exposure and contamination of its Property.

106.    As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

107.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

22

## THIRD CAUSE OF ACTION
NEGLIGENCE

108. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

109. As a manufacturer and seller of PFAS-containing AFFF, each Defendant owed a duty to Plaintiff and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

110. Defendants knew or should have known that PFOA and/or PFOS were leaching from AFFF used in outdoor fire control exercises and fire emergency scenarios and contaminating water resources.

111. Even though Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

    a. Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing AFFF;

    b. Issued instructions on how AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Plaintiff's Property;

    c. Failed to recall and/or warn the users of AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

    d. Failed and refused to issue the appropriate warning and/or recalls to the users of PFAS-containing AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF.

112.    As a direct and proximate result of Defendants' negligence, the Plaintiff has

suffered, and continues to suffer, property damage requiring investigation, remediation, and

monitoring costs to be determined at trial.

113.    Defendants knew that it was substantially certain that its acts and omissions

described above would threaten public health and cause extensive contamination of subterranean

drinking water supplies. Defendants committed each of the above-described acts and omissions

knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless

disregard for the health and safety of others, and for the Plaintiff's property rights.

### FOURTH CAUSE OF ACTION
TRESPASS

114.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding

paragraphs as if fully restated in this count.

115.    Plaintiff is the owner, operator and actual possessor of real property and

improvements used for collecting drinking water.

116.    Defendants manufactured, distributed, marketed, and promoted PFAS-containing

AFFF with the actual knowledge and/or substantial certainty that PFAS-containing AFFF would,

through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater,

causing contamination.

117.    Defendants negligently, recklessly, and/or intentionally produced and marketed

PFAS-containing AFFF in a manner that caused PFOA and PFOS to contaminate Plaintiff's

property.

118.    As a direct and proximate result of Defendants' trespass, Plaintiff has suffered and

continues to suffer property damage requiring investigation, remediation, and monitoring costs to

be determined at trial.

119.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

   a.    Costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA/PFOS contamination in Plaintiff's Property;

   b.    Costs and expenses related to past, present, and future treatment and remediation of PFOA and/or PFOS contamination of Plaintiff's Property;

   c.    Costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Plaintiff's Property;

   d.    Costs and expenses related to the past, present, and future installation, maintenance, and purchase of alternative water supplies.

2.    Punitive damages;

3.    Consequential damages;

4.    Pre-judgment and post-judgment interest;

5.    Any other and further relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial pursuant to Massachusetts Rule of Civil Procedure 38.

Dated:    January 19, 2024

Respectfully submitted,

_/s/ Richard Sandman_
Richard M. Sandman (BBO # 440940)
**SANDMAN LAW, LLC**
501 Congress Street, Suite 2021
Boston, MA 02210
Telephone:  (978) 886-0640
rich@sandman-law.com

Scott Summy (TX Bar No. 19507500)
Cary McDougal (TX Bar No. 13569600)
Carla Burke Pickrel (TX Bar No. 24012490)
Jason Julius (TX Bar No. 24131101)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181
ssummy@baronbudd.com
cmcdougal@baronbudd.com
cburkepickrel@baronbudd.com
jjulius@baronbudd.com

Philip F. Cossich, Jr.
Brandon J. Taylor (LA Bar No. 27662)
Darren Sumich (LA Bar No. 23321)
David A. Parsiola (LA Bar No. 21005)
Christina M. Cossich (LA Bar No. 32407)
Andrew Cvitanovic (LA Bar No. 34500)
Luana N. Smith (LA Bar No. 35534)
**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone:  (504) 394-9000

*Attorneys for Plaintiff*

26